# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF CONNECTICUT
# BRIDGEPORT DIVISION

---------------------------------------------------------------X
In re:                                           :     CASE NO. 08-50773 (AHWS)
                                                 :
STAMFORD CENTER FOR THE ARTS, INC.  :     CHAPTER 11
                                                 :
            Debtor                               :
---------------------------------------------------------------X

### MOTION OF THE DEBTOR FOR AN ORDER PURSUANT TO SECTIONS 105(a) AND 363(b) OF THE BANKRUPTCY CODE AUTHORIZING THE DEBTOR TO PAY THE FEES OF POTENTIAL LENDER IN CONNECTION WITH SECURING EXIT FINANCING

The above-captioned debtor and debtor-in-possession (the "Debtor") hereby moves this Court, pursuant to sections 105(a) and 363(b) of title 11 of the United States Code (the "Bankruptcy Code"), for entry of an order authorizing the Debtor to pay certain due diligence fees and out-of-pocket expenses, including legal fees (collectively, the "Work Fees"), of a specific lender in connection with potential exit financing. In support of this Motion, the Debtor respectfully states as follows:

### JURISDICTION

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue of this proceeding is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. The relief requested herein is authorized by Sections 105 and 363 of the Bankruptcy Code.

### BACKGROUND

2.      On August 22, 2008, (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Bankruptcy Code.

3.     Pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, the Debtor is operating its business and managing its properties as a debtor in possession. On September 5, 2008, the Office for the United States Trustee appointed an official committee of unsecured creditors in this case.

Overview of the Debtor's Business

4.     The Debtor is a regional performing arts organization dedicated to creating, promoting, and presenting the highest quality entertainment, educational, and outreach programs. The Debtor strives to utilize its facilities to enhance the quality and variety of cultural life in the area, as well as the economic development of the community. Last season alone, the Debtor hosted more than 500 events, including 125 stage performances, and attracted more than 80,000 patrons to downtown Stamford.

5.     The Debtor's operations are now based solely out of the Palace Theatre. In April, 2009 the Debtor leased the Rich Forum exclusively to NBC Universal for use as a television production studio.[1] The Debtor has retained a small contingent of full-time employees to handle the day-to-day operations and administrative tasks of the Debtor. The Debtor has also retained its "front of house" performance related employees (i.e. house managers, ushers, stage hands, concession staff, and building security), which are employed only as needed for rentals. The stage hands and performance related employees are members of the International Alliance of Theatrical and Stage Employees Union (the "IATSE"), and their work with the Debtor is governed by a collective bargaining agreement[2] between the SCA and IATSE.

---

[1] The lease to NBC is for two years with five one-year renewable options.
[2] The collective bargaining agreement is scheduled to expire in August 2009.

## THE DEBTOR'S NEED FOR EXIT FINANCING

6. The Debtor is vigorously working towards emergence from bankruptcy, and has recently filed a proposed plan of reorganization (the "Proposed Plan") and a proposed disclosure statement describing that Proposed Plan (the "Proposed Disclosure Statement").[3] A critical element of the restructuring contemplated by the Proposed Plan, and a condition precedent to the occurrence of the Effective Date, is the availability of an "Exit Facility" that provides sufficient funding for the Debtor to meet its cash obligations under the Plan as of the Effective Date. Specifically, the Proposed Plan provides for, among other things, specific and substantial payments to general unsecured creditors out of a proposed Exit Facility, and the Proposed Plan explicitly provides that it shall not become effective, and the Effective Date shall not occur, unless and until the Exit Facility is consummated (among other things).

7. Although the Debtor has not entered into agreements with any prospective lender, it has identified one potential lender (the "Proposed Lender") that would provide the Exit Facility in the amounts, and on the terms, necessary to support the Proposed Plan. Specifically, as described in the Proposed Disclosure Statement, the Proposed Lender would provide the Debtor a $750,000 term loan (the "Term Loan") and a $100,000 revolving credit facility (the "Revolver," and together with the Term Loan, the "Exit Facility"). Upon the consummation of the Proposed Plan, the Term Loan would be used to pay the costs and expenses associated with the Exit Facility and the costs and expenses of the Debtor's bankruptcy case, and to make substantial payments on account of general unsecured claims (all as more fully set forth in the Proposed Plan).

---

[3] The Court is currently scheduled to consider approval of the Disclosure Statement on August 11, 2009.

8. Although the Debtor is confident that the Potential Lender will provide the Exit Facility, no commitment to lend has been made at this time and any actual commitment to lend is subject to the Potential Lender's due diligence and review of the Debtor's books and records. In connection therewith, as a condition precedent to moving forward with such diligence efforts and as is customary in the commercial lending industry, the Potential Lender has requested that the Debtor pay certain Work Fees associated with the Potential Lender's reasonable out-of-pocket expenses, including legal fees, that may be incurred in connection with its due diligence and documentation efforts. The Debtor anticipates that such Work Fees shall not exceed $15,000[4] in the aggregate.

9. Understandably, the Potential Lender does not wish to undertake a costly and time consuming due diligence process to achieve a final financing package, if it must bear all of the execution risk attendant to such financing not closing — e.g., the risk that the Court does not approve the reimbursement of its expenses or that the Proposed Plan is not eventually confirmed and consummated. For this reason, the Potential Lender has requested that the Debtor seek advance authority to pay the Work Fees. Following the Court's approval of the Work Fees, the Potential Lender will be able to proceed with its evaluation, preparation and submission of exit financing commitments to the Debtor — which is a critical and necessary step in the Debtor's efforts to confirm the Proposed Plan.

10. The Debtor has determined, in its sound business judgment, that the exit financing terms offered to the Debtor by the Potential Lender are more favorable than any other foreseeable alternative. The Debtor further believes that the benefits to the Debtor of paying the Work Fees in advance outweigh the risks associated with such

---

[4] The Debtors reserve the right to seek Court authority to increase any of the amounts requested herein.

{00804125; 2; 9500-55}                                    4

advance payment.

## RELIEF REQUESTED

11. By this Motion, the Debtor seeks authority to pay to the Potential Lender $15,000 as advance reimbursement of Work Fees incurred by the Potential Lender in connection with performing due diligence related to the Exit Facility, and in connection with the documentation thereof. The total Work Fees payable to the Potential Lender pursuant to this Motion shall not exceed $15,000.

12. Under the circumstances, including the Debtor's need to secure a commitment for the Exit Facility on acceptable terms and on an expedited basis, the Debtor believes that the relief requested in this Motion is an appropriate exercise of its business judgment and is in the best interests of its estate and creditors.

## BASIS FOR RELIEF REQUESTED

13. The Debtor seeks the relief requested in this Motion pursuant to sections 105(a) and 363(b) of the Bankruptcy Code. In pertinent part, section 363(b) of the Bankruptcy Code provides that "[t]he trustee, after notice and hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b). Courts in this Circuit and others interpreting section 363(b) have generally approved the use, sale or lease of estate property out of the ordinary course of business where there is a sound business justification for the proposed transaction. See, e.g., Myers v. Martin (In re Martin), 91 F.3d 389, 395 (3d Cir. 1996) (noting that under normal circumstances, courts defer to a trustee's judgment concerning use of property under section 363(b) when there is legitimate business justification); In re Delaware and Hudson Ry. Co., 124 B.R. 169, 176 (D. Del. 1991) (noting that the Third Circuit has adopted the

"sound business judgment" test for the use of property under section 363). Moreover, pursuant to section 105(a), "[t]he court may issue any order, process or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

14. The debtor has the initial burden of establishing that a valid business purpose exists for the use of estate property in a manner that is not in the ordinary course of business. See In re Montgomery Ward Holding Corp., 242 B.R. 142, 154 (D. Del. 1999). However, once the debtor articulates such a valid business justification, it is presumed that "in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action was in the best interest of the company." In re Integrated Resources, Inc., 147 B.R. 650, 656 (S.D.N.Y. 1992) (quoting Smith v. Van Gorkom, 488 A.2d 858, 872 (Del. 1985)). Thus, after the debtor satisfies its initial burden of establishing a valid business justification, the business judgment rule shields the debtor's management from judicial second-guessing, and mandates that a court approve the debtor's business decision unless that decision is the product of bad faith or gross abuse of discretion. See id.; see also Lubrizol Enters., Inc. v. Richmond Metal Finishers, Inc., 756 F.2d 1043, 1047 (4th Cir. 1985), cert. denied, 475 U.S. 1057 (1986).

15. The Debtor submits that there are substantial business justifications for authorizing the relief requested herein. First, as discussed above, the Debtor's ability to close the Exit Facility is a condition precedent to the Proposed Plan's effectiveness, and without the relief requested herein the Debtor may not be able to secure a satisfactory commitment for the Exit Facility on a timely basis.

16. The Debtor believes that payment of Work Fees to cover the due diligence fees and reasonable out-of-pocket expenses of the Potential Lender in connection

with its diligence efforts is customary under these circumstances, and it also believes that the total Work Fees that may be payable to the Potential Lender are reasonable and consistent with amounts normally demanded in the marketplace. The Debtor estimates that its maximum exposure with respect to the Work Fess is no more than $15,000, which is relatively modest compared to the estimated size of the Exit Facility ($850,000 in the aggregate). Based on the foregoing, the Debtor believes that payment of the Work Fees is reasonable, appropriate and warranted under the circumstances and is in the Debtor's best interests.

17. In summary, the benefits to the Debtor, its estates and creditors that will result from the Debtor's payment of the Work Fees far outweigh the corresponding costs to the Debtor's estate. As such, the Court should authorize the Debtor to pay the Work Fees to the Potential Lender so that the Debtor can continue to expeditiously move toward obtaining the Exit Facility and securing timely confirmation of the Proposed Plan.

## NOTICE

18. Notice of this Motion has been given via e-mail, facsimile, telephone, and/or hand delivery, as appropriate, to the United States Trustee, counsel to the official committee of unsecured creditors, counsel to the Debtor's secured lender, the United States Attorney General, and any party that has requested notice pursuant to rule 2002 of the Bankruptcy Code. The Debtor submits that no other or further notice need be given under the circumstances.

## NO PRIOR MOTION

19. No previous motion for relief sough herein has been made to this or any other Court.

## CONCLUSION

WHEREFORE, the Debtor respectfully requests that this Court enter the attached proposed Order granting the relief requested herein, and for such other and further relief as this Court deems just and proper.

STAMFORD CENTER FOR THE ARTS, INC.

By: /s/ Henry P. Baer, Jr.
    Henry P. Baer, Jr. (ct 27781)
    Meghan A. Laganza (ct 23561)
    FINN DIXON & HERLING LLP
    177 Broad Street
    Stamford, CT  06901-2689
    Tel.:  (203) 325-5000
    Fax:  (203) 325-5001
    Email:  hbaer@fdh.com